**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT "ZAK" KNOX** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:18cv220-HSO-JCG** |
| | § | |
| | § | |
| **CITY OF GAUTIER, et al.** | § | **DEFENDANTS** |

**<u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART WITHOUT PREJUDICE DEFENDANTS' MOTIONS
[13], [15], [17] TO DISMISS, DISMISSING PLAINTIFF ROBERT "ZAK"
KNOX'S FEDERAL CLAIMS, AND REMANDING CASE TO STATE COURT</u>**

BEFORE THE COURT are the following Motions: (1) Defendant Brandon Price's Motion [13] to Dismiss Plaintiff's Claims Asserted Against Him Individually; (2) Defendant Jeffrey Jensen's Motion [15] to Dismiss Plaintiff's Claims Asserted Against Him Individually; and (3) Defendant City of Gautier and Defendants Brandon Price and Jeffrey Jensen's, in their official capacities, Motion [17] to Dismiss Plaintiff's Claims. These Motions [13], [15], [17] are fully briefed. In accordance with the Court's January 19, 2021, Order [26] Providing Notice Under Federal Rule of Civil Procedure 12(d), the Court will treat the Motions as ones for summary judgment under Rule 56. *See* Order [26] at 1-2.

After due consideration of the Motions, related pleadings, the record, and relevant legal authority, the Court finds that Defendants' Motions [13], [15], [17] should be granted in part, to the extent Defendants seek dismissal of Plaintiff's federal claims, and Plaintiff's federal claims will be dismissed. Defendants' Motion

[13], [15], [17] should be denied in part without prejudice to the extent they seek dismissal of Plaintiff's state-law claims.  The Court will decline to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c) and will remand this matter to state court.

## I.   BACKGROUND

A.   Factual background

1.   Plaintiff's allegations

This is a case in which Plaintiff Robert "Zak" Knox ("Plaintiff" or "Mr. Knox") claims that he was subjected to excessive force by officers of the Gautier Police Department on December 21, 2016.  When Plaintiff returned to his home in the City of Gautier, Mississippi, that day he heard his neighbor in distress and screaming for help.  *See* Am. Compl. [12] at 2.  Mr. Knox went to assist and discovered that the neighbor's adult son had committed suicide.  *See id.*  Mr. Knox called 911 for assistance and requested an ambulance.  *See id.*

Mr. Knox alleges that Defendant Jeffrey Jensen ("Officer Jensen"), a police officer with the City of Gautier Police Department, arrived on the scene and "ran through Knox's home across the street, guns drawn, while Knox was trying to get the officer to come across the street to the neighbor's home."  *Id.* at 3.  Officer Jensen eventually came across the street, and Defendant Brandon Price ("Officer Price") arrived on the scene.  *Id.*

Officers Jensen and Price entered the neighbor's home with their firearms drawn, at which point Mr. Knox claims that he approached in an attempt to assist,

but the officers screamed at Mr. Knox to stay outside.  *See id.*  Mr. Knox asked one

of the officers to come outside and talk to him about the situation, and he requested

that the officers to put their guns away.  *See id.*  Officers Jensen and Price closed

the front door of the neighbor's home in Mr. Knox's face, *see id.* at 4, and he

responded by asking if the officers had a warrant to be inside the home, which he

claims upset them, *see id.*

Mr. Knox alleges that as he began to walk away from the door, Officers

Jensen and Price "went outside and rushed at Knox."  *Id.*  According to Mr. Knox, as

the officers approached him in an aggressive manner, he backed away and asked

the officers not to hit him.  *See id.*  Officers Jensen and Price yelled at Mr. Knox to

get off the property, and before he could comply they placed Mr. Knox "in an arm

bar and [took] Knox to the ground . . . ."  *Id.*  Mr. Knox states that although he

immediately complied with the officers' commands, while he was on the ground he

was tasered multiple times and "had his arm twisted, tearing his shoulder."  *Id.*; *see*

*also* Pl.'s Decl. [27-1] at 1.

2.   Police body camera footage

Officer Price was equipped with a body camera, which Plaintiff has

conventionally filed as Exhibit "A" to his Response [19].  *See* Ex. "A" (conventionally

filed).  The video begins as Officer Price arrives at Mr. Knox's neighbor's home and

exits his vehicle.  *See id.*  Officer Price approaches Officer Jensen, who is in uniform

standing near the front door, and both officers enter the home.  *See id.*  Instead of

complying with officers' instructions to remain outside the home because they were

treating the home as a crime scene, the video reveals that Mr. Knox repeatedly tried to enter the house and ask the officers to speak with him. *See id.* It is clear from the video that Mr. Knox does not comply with several instructions to leave the premises. *See id.*

Eventually, Officer Jensen approaches Mr. Knox and tries to arrest him, but Mr. Knox resists those efforts. *See id.* Officer Price begins to assist, and one of the officers instructs Mr. Knox to stop resisting. *See id.* Mr. Knox can be heard yelling "I'm calm" and making similar outbursts, but the video depicts that he does not cooperate with the officers. *See id.* Mr. Knox struggles and shouts, "this is illegal," and "I know my rights!" *Id.* The officers instruct Mr. Knox to calm down, and when he does not, Officer Jensen appears to deploy his taser. *See id.* Another individual, whom it turns out is an off-duty police officer from a different police jurisdiction and is not in uniform (the "Biloxi officer"), approaches and inquires if the officers need help. *See id.* One of the Gautier officers replies in the affirmative, and all three officers struggle to restrain Mr. Knox. *See id.* One officer shouts multiple times for Mr. Knox to put his hands behind his back, and once the officers are able to place Mr. Knox on his stomach, he continues to struggle as they try to handcuff him behind his back. *See id.*

At the approximate timestamp of 21:48:32 on the video, Mr. Knox is finally handcuffed behind his back. *See id.* Officer Jensen immediately stands up and walks away from Mr. Knox and toward the decedent's house, leaving only the Biloxi officer and Officer Price with Mr. Knox. *See id.* Mr. Knox states that he "can't

4

breath," and the officers tell him numerous times to calm down and relax.  *See id.*
The Biloxi officer rolls Mr. Knox onto his side and directs him to concentrate on his
breathing, and then helps Mr. Knox up into a seated position on the ground.  *See id.*

A third unidentified uniformed Gautier officer (the "third officer") arrives,
and Officer Price leaves Mr. Knox handcuffed in the seated position with the third
officer and the Biloxi officer.  *See id.*  Mr. Knox can be heard continuing to shout
while seated in the yard, but at this point Officers Price and Jensen are near the
front door of the home and nowhere near Mr. Knox.  *See id.*  After taking about 20
seconds to catch his breath, Officer Price returns to the yard where Mr. Knox is
seated, as Mr. Knox continues to shout about the handcuffs, not being able to
breath, and his living across the street.  *See id.*

At this point, the Biloxi officer appears to be the only one with his hands on
Mr. Knox, and he helps Mr. Knox stand by placing his hands under Mr. Knox's
arms.  *See id.*  The Biloxi officer then assists Mr. Knox in the direction of a marked
police vehicle, and the third officer eventually takes over and walks Mr. Knox to the
patrol car.  *See id.*  At this point Officer Price is apparently beside them as he walks
toward the vehicle as well.  *See id.*

Once outside the patrol car, Mr. Knox is bent over near the trunk of the car,
with his hands handcuffed behind his back, as the third officer has his right arm
under Mr. Knox's left arm.  *See id.*  Officer Price appears to open the back door of
the car.  *See id.*  The third officer places Mr. Knox in the backseat of the car, and
Officer Price's body camera reflects that he walks away from the vehicle while

speaking with the Biloxi officer. *See id.* Officer Price returns to Mr. Knox's neighbor's home, where Officer Jensen is waiting for him. *See id.* Both enter the home and inspect the premises. *See id.* There is no indication from the record that either Officer Price or Officer Jensen had any other interaction with Mr. Knox after that time. *See id.*

3.   Mr. Knox's convictions

Mr. Knox was charged and found guilty in the County Court of Jackson County, Mississippi, of the crimes of disorderly conduct under Mississippi Code § 97-35-7, and resisting arrest under Mississippi Code § 97-9-73. *See* Am. Compl. [12] at 4-5; Order [13-2] at 1; Order [13-3] at 1. Mr. Knox appealed, and on March 11, 2020, the Circuit Court of Jackson County, Mississippi, affirmed both of Mr. Knox's convictions. *See* Orders [13-4], [15-4], [17-4].

According to the County Court, Mr. Knox was charged with disorderly conduct

> in that he allegedly refused to stay out of an active crime scene after repeatedly being told . . . to do so by City of Gautier officer Brandon Price. The Court also specifically finds that [Knox] interfered with a lawful investigation to the point that the officers in question had probable cause to arrest [Knox]. Based on the evidence presented, the Court finds that the City of Gautier has met its burden of proof on all required elements in this matter, and finds that the Defendant did, in fact, commit the crime of disorderly conduct in violation of Miss. Code Ann. § 97-35-7.

Order [13-2] at 1.

Mr. Knox was also charged with resisting arrest

> in that he allegedly pulled his arms away from arresting officers and attempted to take away the taser of an arresting officer during a lawful

6

arrest of [Knox]. The Court also specifically finds that officers in question had probable cause to arrest [Knox] for disorderly conduct and interference with a lawful investigation. Based on the evidence presented, the Court finds that the City of Gautier has met its burden of proof on all required elements in this matter, and finds that [Knox] did, in fact, commit the crime of resisting arrest in violation of Miss. Code Ann. § 97-9-73.

Order [13-3] at 1. Mr. Knox's convictions remain final and valid.

B.    Procedural history

On March 23, 2018, Mr. Knox filed a Complaint [1-1] in the Circuit Court of Jackson County, Mississippi, naming as Defendants the City of Gautier and Officers Price and Jensen, in their individual and official capacities. *See* Compl. [1-1] at 1. Defendants removed the case to this Court, and it was stayed on January 3, 2019, pending the resolution of Mr. Knox's state court appeal of his criminal convictions, *see* Order [7] at 1, which were ultimately affirmed on March 11, 2020, *see* Orders [13-4], [15-4], [17-4].

The stay in this case was lifted, and Mr. Knox filed an Amended Complaint [12] advancing claims against all Defendants for violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 for use of excessive force and for state-law claims of "negligence, gross negligence, trespass, excessive force, assault, battery, defamation, negligent training, and negligent supervision." Am. Compl. [12] at 6-7. Mr. Knox also advanced a § 1983 claim against the City of Gautier for failure to train or supervise. *See id.* at 7-8.

Defendants filed three Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Knox's § 1983 excessive force claim is barred

by the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See* Mot. [13] at 1-2; Mot. [15] at 1-2; Mot. [17] at 2.  As for the § 1983 claims against Officers Price and Jensen in their individual capacities, Defendants argue in the alternative that they are entitled to qualified immunity, *see* Mot. [13] at 1-2; Mot. [15] at 1-2, and that the federal claims against them in their official capacities should be dismissed as unnecessary and duplicative, *see* Mot. [17] at 2.  Defendants further contend that the Mississippi Tort Claims Act ("MTCA") bars Mr. Knox's state-law claims.  *See* Mot. [13] at 2; Mot. [15] at 2; Mot. [17] at 2.

Mr. Knox filed a consolidated Response [19] in opposition to the Motions, asserting that his excessive force claims are not barred by *Heck*, as Defendants have not shown how his claims would negate his criminal convictions.  *See* Resp. [19] at 5-8.  Mr. Knox takes the position that his claims arise from injuries he sustained after he had surrendered to the officers, rendering *Heck* inapplicable, *see id.* at 8-9, and that qualified immunity is not appropriate based upon the facts pled in the Amended Complaint that he was tasered and his shoulder torn after he was on the ground complying with the officers' commands, *see id.* at 9-12.  Mr. Knox maintains that he has also adequately stated a § 1983 claim against the City of Gautier because the Amended Complaint sets forth allegations that it failed to provide training regarding the cessation of the use of force once an individual becomes compliant.  *See id.* at 13-14.

Mr. Knox also contends that he has pled sufficient facts to hold the City of Gautier liable for the unlawful actions of its officers under the MTCA, based upon

his position that despite his compliance with officers' commands, they continued to use excessive force against him. *See id.* at 14-15.  Mr. Knox does concede that under the MTCA, "the individual Defendants cannot be held personally liable under state law for the actions taken within the course and scope of their employment," and he further concedes his "state law claims for negligent hiring and supervision." *Id.* at 2.

In their joint Reply [21], Defendants counter that the body camera video submitted by Mr. Knox with his Response demonstrates that he was not compliant with officers until he was handcuffed, and that no force was used after that point. *See* Reply [21] at 2-4.  For this reason, the factual basis supporting Mr. Knox's convictions is temporally and conceptually inseparable from his excessive force claim, such that a favorable verdict on the excessive force claim would undermine Mr. Knox's criminal convictions. *See id.* at 4.

In light of the body camera footage Mr. Knox filed with his Response [19], and upon which Defendants relied in their Reply [21], the Court entered an Order [26] Providing Notice Under Federal Rule of Civil Procedure 12(d) that it may convert the Motions [13], [15], [17] to Dismiss to motions for summary judgment under Rule 56.  *See* Order [26] at 1-2.  The Court directed the parties to present any additional material they wished the Court to consider on or before January 29, 2021. *See id.*

Mr. Knox filed a Response [27] and attached his own Declaration [27-1], arguing that if a jury finds his version of the facts to be true, Defendants violated

his right to be free from excessive force.  *See* Resp. [27] at 3.  Defendants' Reply [29] attaches the Circuit Court's order [29-1] affirming Mr. Knox's convictions and argues that the *Heck* bar applies to his excessive force claims.  *See* Reply [29] at 1-2.

## II.  DISCUSSION

### A.    Relevant legal authority

### 1.    Summary judgment standard

Rule 12(d) provides that, if on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  In that situation, a court must utilize the summary judgment standard in resolving the motion.  *Blake v. Lambert*, 921 F.3d 215, 219 (5th Cir. 2019).  The Court will consider the evidence presented by the parties and treat the Motions to Dismiss as requests for summary judgment under Rule 56.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

2.    Qualified immunity

Liability under 42 U.S.C. § 1983 "results when a person acting 'under color of state law, deprives another of rights 'secured by the Constitution' or federal law." *Thurman v. Med. Transportation Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (quoting 42 U.S.C. § 1983). In this case, Officers Price and Jensen assert that they are entitled to qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quotation mitted). The doctrine applies in situations where an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known at the time the conduct occurred. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).

The qualified immunity analysis has two prongs: (1) "whether an official's conduct violated a constitutional right of the plaintiff," and (2) "whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

> A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.

*Id.* (citations omitted).

In order to be clearly established, a plaintiff is not required to identify a case directly on point, but case law must place the statutory or constitutional question

beyond debate. *Garcia v. Blevins*, 957 F.3d 596, 600-01 (5th Cir. 2020). "In excessive-force cases, police officers are entitled to qualified immunity unless existing precedent *squarely governs* the specific facts at issue." *Id.* at 601 (emphasis in original) (quotation omitted). Because police officers are often required to make split-second judgments about the use of force in tense, uncertain, and rapidly evolving circumstances, a court must "judge the reasonableness of the force used from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and it must avoid second-guessing a police officer's assessment of the danger at the scene. *Id.* at 602 (quotation omitted).

Although a plaintiff bears the burden of negating qualified immunity, all factual inferences are drawn in his favor. *Brown*, 623 F.3d at 253. A "plaintiff's factual assertions are taken as true to determine whether they are legally sufficient to defeat the defendant's motion for summary judgment." *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020) (quotation omitted).

3.    The *Heck* bar

Defendants argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Mr. Knox's excessive force claims. In *Heck,* the United States Supreme Court recognized that

> the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Heck*, 512 U.S. at 486. Under *Heck*, a § 1983 plaintiff may not recover damages for

any harm caused by actions whose unlawfulness would render a criminal conviction or sentence invalid, unless a plaintiff proves that the conviction or sentence has been invalidated.  *See id.*  If a court determines that a plaintiff's action, if successful, will not demonstrate the invalidity of any outstanding criminal judgment, the action may proceed.  *See id.*

"Determining whether a particular claim is barred by *Heck* is analytical and fact-intensive and requires the court to consider the specifics of the individual claim," and a court must assess "whether a claim is temporally and conceptually distinct from the related conviction and sentence."  *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (quotation omitted).  The question is whether a plaintiff's claim is "necessarily inconsistent" with his conviction, or whether it can "coexist" with the conviction "without calling it into question."  *Id.* (quotation omitted).

The Fifth Circuit has explained that

> when a plaintiff brings multiple § 1983 claims, *Heck* may bar those claims that potentially conflict with the factual underpinnings of a prior conviction, while posing no bar to other claims.  Put simply, there is no *Heck* bar if the alleged violation occurs "after" the cessation of the plaintiff's misconduct that gave rise to his prior conviction.

*Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir.), *cert. denied*, 141 S. Ct. 567 (2020).  Thus, where a complaint presents a chronology of events and pleads a claim for excessive force which occurred after a plaintiff was arrested and restrained, *Heck* does not bar post-restraint excessive force claims.  *Id.* at 382-83.

B.   <u>Mr. Knox's excessive force claim under 42 U.S.C. § 1983</u>

Mr. Knox alleges that he was compliant with officers prior to and after being

13

restrained.  *See* Pl.'s Decl. [27-1] at 1.  However, any claim of excessive force prior to the time Mr. Knox was restrained is clearly in conflict with the factual underpinnings of his state court convictions for disorderly conduct and resisting arrest, and *Heck* plainly bars such a claim.  There is no evidence before the Court that Mr. Knox's prior convictions for disorderly conduct and resisting arrest have been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. at 487.  *Heck* thus bars any claim for excessive force prior to Mr. Knox being restrained.

As for any post-restraint claim, Mr. Knox contends that once restrained he was compliant with officers, but that they continued to taser, push, and kneel on him, and twisted his arms over his head, injuring his shoulder.  *See* Pl.'s Decl. [27-1] at 1.  The Supreme Court has instructed that at summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Where a nonmovant's version of events is "so utterly discredited" by a videotape "that no reasonable jury could have believed him," a court should view the facts "in the light depicted by the videotape." *Id.* at 380-81.  The Fifth Circuit has cautioned that this standard "is a demanding one: a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account."

*Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 730 (5th Cir. 2018).

The question here is whether Mr. Knox has presented any post-restraint claims that, even if successful, would not demonstrate the invalidity of either of the criminal judgments against him. *See Aucoin*, 958 F.3d at 382. Based upon the evidence before the Court, including the video, there was no "cessation" of the misconduct which supported Mr. Knox's convictions. *See id.* Mr. Knox's version of post-restraint events is clearly discredited by Officer Price's body camera footage such that "no reasonable jury could have believed him." *Scott*, 550 U.S. at 380-81. Therefore, the Court views the facts "in the light depicted by the videotape," *id.*, and finds that this is not a case where Mr. Knox can advance a post-restraint claim for excessive force. There is no evidence that Officer Jensen had any contact with Mr. Knox once he was restrained, and even though Officer Price appears in the video to lay his left hand on Mr. Knox's shoulder while the third officer is guiding him into the police car, there is no indication in the summary judgment record that Officer Price exerted any force on Mr. Knox after he was restrained.

Even if there were some discrete, post-restraint, excessive force claim that Mr. Knox could articulate against Officers Price and Jensen, the Court concludes in the alternative that both officers would be entitled to qualified immunity. Once Officers Price and Jensen invoked qualified immunity, the summary judgment burden shifted to Mr. Knox to establish a genuine fact issue as to whether each officer's conduct violated clearly established law. *See Brown*, 623 F.3d at 253.

In opposition to summary judgment, Mr. Knox has submitted the body

camera footage, which the Court has already discussed, and his own Declaration. However, Mr. Knox's Declaration speaks of "officers" collectively, rather than detailing what each individual officer allegedly did. Pl.'s Decl. [27-1] at 1. The video clearly depicts that once Mr. Knox is handcuffed, the officers were not acting in unison, and thus the Court must consider their qualified immunity claims individually. S*ee Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) ("In cases where the defendants have not acted in unison, qualified immunity claims should be addressed separately for each individual defendant.") (quotation omitted); *see also Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020) (same).

There is no indication from the video that either Officer Price or Officer Jensen exerted any force upon Mr. Knox after he was handcuffed. The video clearly reveals that most of Mr. Knox's interactions with police post-restraint were with the Biloxi officer and the third officer, not Defendants Price or Jensen. Mr. Knox has not offered any evidence to show that either Officer Price's or Officer Jensen's post-restraint conduct violated his constitutional right to be free from excessive force or was otherwise unreasonable in light of clearly established law. *But see Brown*, 623 F.3d at 253; *see also, e.g., Joseph*, 981 F.3d at 325 (5th Cir. 2020) (considering each officer's actions independently in qualified immunity analysis). Mr. Knox's Declaration of what "officers" in general did is insufficient to meet his burden of establishing that each officer's allegedly wrongful conduct violated clearly established law or withstand Officer Price's and Officer Jensen's qualified

16

immunity.  *See Joseph*, 981 F.3d at 325; *Darden*, 880 F.3d at 731; *Brown*, 623 F.3d
at 253.

The body camera footage demonstrates that Officer Jensen immediately
returned to the house once Mr. Knox was handcuffed and lying on his stomach.
While Officer Price remained in the vicinity of Mr. Knox at various times after he
was handcuffed, there is no evidence in the record that could reasonably be viewed
as indicating that he exerted any force against Mr. Knox after he was handcuffed.

To the extent that Officer Price's laying of his left hand upon Mr. Knox while
the third officer was attempting to place him in the police vehicle constitutes the
use of force, the video clearly depicts that Mr. Knox resisted being placed into the
police car.  Mr. Knox has not shown that any such *de minimis* use of force by Officer
Price was excessive under objective standards of reasonableness.  *See Graham v.
Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later
seem unnecessary in the peace of a judge's chambers violates the Fourth
Amendment.") (quotation omitted); *Joseph*, 981 F.3d 336 ("the use of force is
contrary to the Fourth Amendment if it is excessive under objective standards of
reasonableness").  Moreover, Mr. Knox has not provided any detail about the level
of force, if any, used by Officer Price to direct him toward and into the police car.
Without more, Mr. Knox has failed to meet his burden to show that any push by
Officer Price was objectively unreasonable under the circumstances.  *See* Pl.'s Decl.
[27-1] at 1; *see also, e.g., Emesowum v. Cruz*, 756 F. App'x 374, 381 (5th Cir. 2018)
(reversing denial of officers' motion for summary judgment on claim of excessive

force when the plaintiff provided "no detail about the level of force used to direct him to the police car," and holding that "[w]ithout more, [the plaintiff] has failed to meet his burden to show that pushing and dragging him was objectively unreasonable under the circumstances.").

In sum, the video clearly contradicts Mr. Knox's allegations regarding any post-restraint force as to Officers Price and Jensen. *Heck* bars Mr. Knox's § 1983 excessive force claims, and they will be dismissed with prejudice until the *Heck* conditions are met.

C.    Municipal liability for excessive force claims

To the extent that Mr. Knox is seeking to hold the City of Gautier liable under § 1983 for any post-restraint, excessive force claims that are somehow not barred by *Heck* (meaning any discrete, subsequent force by an officer or officers other than Officer Price and Officer Jensen), he must establish that (1) a policymaker (2) promulgated a policy or custom (3) that is the "moving force" of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978).  An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)).  The policy must be either unconstitutional or "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would

result." *Id.* (quotation omitted).

Mr. Knox has presented no evidence of a policy or custom of the City of Gautier, or of a City policymaker who promulgated a policy or custom that was the moving force behind the violation of any constitutional right. *See id.*; *see also Monell*, 436 U.S. at 694. Mr. Knox's municipal liability claims for excessive force should be dismissed as well.[1]

D.    Section 1983 claim against the City of Gautier for failure to train or supervise

Mr. Knox also advances a § 1983 claim against the City of Gautier for failure to train or supervise its police officers. Am. Compl. [12] at 7-8. The City takes the position that these claims are also barred by *Monell*. *See* Mem. [18] at 3, 10-11.

To prevail on a "failure to train theory," Mr. Knox must demonstrate: (1) that the City's training procedures were inadequate; (2) that the City was deliberately indifferent in adopting its training policy; and (3) that the inadequate training policy directly caused the violations in question. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). Mr. Knox presents no competent summary judgment evidence tending to show any of these elements. He cites no evidence concerning the procedures used to train the officers or their qualifications, nor has he supplied evidence of the particular inadequacies of the officers' Fourth Amendment training. *But see id.* Mr. Knox has not demonstrated the first element

---

[1] Mr. Knox names Officers Price and Jensen as Defendants both in their individual and official capacities. However, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell*, 436 U.S. at 691 n.55. Mr. Knox's claims against Officers Price and Jensen in their official capacities are duplicative of his claims against the City of Gautier, and they should be dismissed.

of this claim, that a training procedure or supervision was inadequate.  *See id.*

Nor has Mr. Knox proffered sufficient summary judgment evidence to establish deliberate indifference.  The Fifth Circuit has held that "proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (quotation omitted).  Mr. Knox has not alleged, or submitted any evidence of, a pattern of similar violations, nor has he shown that the facts of this case are such that it should have been apparent to the City that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.  *See id.*  In fact, Mr. Knox has not provided any competent summary judgment evidence to support this claim.  The City of Gautier is entitled to summary judgment on Mr. Knox's § 1983 claim for alleged failure to train or supervise.[2]

---

[2] Mr. Knox stated in his original Response to Defendants' Motions to Dismiss that his "ability to provide more detail [as to allegedly defective training and supervision] is limited before discovery" and that "facts necessary to show a policy or custom in regard to training and supervision must be developed through discovery." Resp. [19] at 13.  However, after the Court gave its notice under Rule 12(d) that it may consider Defendants' Motions under Rule 56, Mr. Knox's second Response [27] did not address the municipal liability claims at all and did not request discovery or deferral of consideration of the requests for summary judgment pending discovery.  Moreover, under the Court's Local Uniform Civil Rule 7(b), "[a]ny written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule."  L.U. Civ. R. 7(b).  Mr. Knox's comments in his original Response about needing to develop certain facts through discovery are not properly before the Court as requests for discovery under Rule 56(d).  Even if they were, Mr. Knox has not shown by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition to Defendants' Motions.  *But see* Fed. R. Civ. P. 56(d).  The Court finds it proper to consider the merits of Defendants' requests for summary judgment on this claim.

E.   <u>State-law claims</u>

Defendants removed the case to this Court on the basis of federal question jurisdiction in light of Mr. Knox's 42 U.S.C. § 1983 claims.  *See* Notice of Removal [1] at 2.  The Court's jurisdiction over the state-law claims was premised upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  The Court has now determined that summary judgment is appropriate as to all of Mr. Knox's federal claims, leaving only his state-law claims.  *See* Am. Compl. [12] at 7.  The Court does not possess original jurisdiction over the remaining state-law claims, as it is clear that the parties are not of diverse citizenship.  *See* 28 U.S.C. § 1332; *see also* Am. Compl. [12] at 1-2 (stating that Mr. Knox is a "resident citizen of Jackson County, Mississippi," and that the City of Gautier is a "governmental entity organized and authorized by the laws of the State of Mississippi").

When a court dismisses all federal claims, "the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state law claims."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  However, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  This includes remanding the case to state court.  *See, e.g., Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (noting that "when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court").

According to the Fifth Circuit, "[t]he general rule is that a court should

decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute . . . ." *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 872 (5th Cir. 2016) (quotation omitted).

From a procedural standpoint, this case remains at an early stage.  No case management order has been entered, and little discovery has taken place.  Based on the particular facts and circumstances of this case, and because the Court has dismissed all claims over which it had original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Mr. Knox's pendent state-law claims, and it will remand this matter to state court for further proceedings.

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. Defendants' Motions [13], [15], [17] will be granted in part as to Mr. Knox's federal claims and denied in part without prejudice as to Mr. Knox's state-law claims.  The Court will decline to exercise supplemental jurisdiction over the remaining state-law claims and will remand this matter to state court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Brandon Price's Motion [13] to Dismiss Plaintiff's Claims Asserted Against Him

Individually; Defendant Jeffrey Jensen's Motion [15] to Dismiss Plaintiff's Claims Asserted Against Him Individually; and Defendant City of Gautier and Defendants Brandon Price and Jeffrey Jensen's, in their official capacities, Motion [17] to Dismiss Plaintiff's Claims are **GRANTED IN PART**, as to Plaintiff's federal claims, **and DENIED IN PART WITHOUT PREJUDICE**, as to Plaintiff's state-law claims.

 **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Robert "Zak" Knox's excessive force claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE to their being asserted again until the *Heck* conditions are met**, and his claims against Defendant City of Gautier for alleged failure to train or supervise under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**.  Plaintiff Robert "Zak" Knox's state-law claims will proceed.

 **IT IS, FURTHER, ORDERED AND ADJUDGED** that, the above-captioned cause is hereby remanded to the Circuit Court of Jackson County, Mississippi, and that a certified copy of this Order of remand shall be immediately mailed by the Clerk to the clerk of the state court pursuant to 28 U.S.C. § 1447(c).

 **SO ORDERED AND ADJUDGED**, this the 11th day of February, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE